IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| 9855 Abernathy Owner, LLC, | Case No. 7:24-cv-01456-JDA |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Gibbs International, Inc.; Jimmy Gibbs, | |
| Defendants. | |

This matter is before the Court on a motion to dismiss filed by Defendant Jimmy Gibbs ("Mr. Gibbs"). [Doc. 25.] For the reasons discussed below, the Court grants the motion in part and denies the motion in part.

**BACKGROUND**[1]

This action arises out of Mr. Gibbs's May 2022 sale of commercial real estate located at 9855 Warren H. Abernathy Highway, Spartanburg, SC 29301 (the "Property") to Plaintiff (the "Sale"), and Plaintiff's subsequent leasing of a portion of the Property to Defendant Gibbs International, Inc. ("Gibbs International"). [Doc. 22 ¶¶ 7, 28, 30.] On

---

[1] The facts included in the Background section are taken directly from the Amended Complaint. [Doc. 22.] The Court notes that although Mr. Gibbs references and relies upon exhibits to the Amended Complaint in his motion to dismiss, such exhibits are attached only to the original Complaint [*see* Docs. 1-1 through 1-14], not to the Amended Complaint. Plaintiff's failure to attach the exhibits to the Amended Complaint appears to be merely a clerical error, and the Fourth Circuit has held that the Court may consider these exhibits without offending the superseding effect of the Amended Complaint. *See Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr., Inc.*, 7 F. App'x 197, 202–03 (4th Cir. 2001) (holding that the court may "consider certain exhibits attached to the original complaint that are integral to and explicitly relied on in the amended complaint, and whose authenticity is not challenged" (cleaned up)).

March 1, 2022, Plaintiff became aware of the opportunity to purchase the Property, which was constructed by Mr. Gibbs and had been occupied by Mr. Gibbs and Gibbs International since its development in 1982. [*Id*. ¶¶ 7–9.] After submitting an offer, Plaintiff hired AEI Consultants ("AEI") to perform site inspections of the Property's buildings. [*Id*. ¶¶ 10–11.]

On April 7, 2022, AEI provided Plaintiff with a "Phase I Environmental Site Assessment," which was used as a preliminary inspection to determine, among other things, any obvious indications of mold or hazardous materials within the Property buildings. [*Id*. ¶ 12; *see* Doc. 1-1.] In conducting its inspection, AEI "relied on information derived from secondary sources including . . . [the] property contact, property owner, property owner representatives . . . and personal interviews." [Docs. 1-1 § 1.3; 22 ¶ 13.] For example, on March 31, 2022, AEI interviewed the Property Site Manager, Mark Smith, who was asked during his interview whether he was "aware of any incidents of flooding, leaks, or other water intrusion and/or complaints related to indoor air quality," to which he answered, "No." [Docs. 1-1 § 6.1.1; 22 ¶ 17.] Similarly, in response to a questionnaire submitted for AEI's "Property Condition Report," Mr. Gibbs's designated representative Lucas Ward "reported no knowledge of suspected mold or microbial growth at the Property and that tenant occupants have not relayed complaints concerning suspected mold or microbial growth." [Docs. 1-3 § 4.0; 22 ¶¶ 19–23.]

After AEI conducted its investigations and interviews of Mr. Gibbs's designated representatives, on April 29, 2022, Plaintiff and Mr. Gibbs executed the "Agreement of Purchase and Sale and Joint Escrow Instructions" (the "PSA"). [Docs. 1-4; 22 ¶ 28.]

2

Section 10 of the PSA contained various acknowledgements that the Property was sold "AS-IS" and that Plaintiff disclaimed any representations or warranties in connection to the sale of the Property, with the exception of any claims arising out of "SELLER'S OR ITS AGENTS' OR REPRESENTATIVES' FRAUD."  [Doc. 1-4 at 26–29.]

The PSA further provided that Gibbs International would continue to lease a portion of the Property (the "Premises") from Plaintiff after the execution of the PSA.  [Docs. 1-4; 1-5.]  As part of standard property management protocol, on December 13, 2023, Plaintiff performed a pre-moveout walkthrough, accompanied by Smith, to identify areas of concern and repairs that should be performed before Gibbs International's lease expired.  [Doc. 22 ¶ 34.]  During the walkthrough, Plaintiff entered Mr. Gibbs's personal office and discovered "obvious signs of recent and reoccurring water damage," including "a multitude of stained ceiling tiles, . . . large pieces of wallpaper peeling off the walls with substantial black growth concentrations behind it, noticeable buckling of the side walls indicating water damage, and a general state of severe neglect of the Premises."  [*Id*. ¶¶ 35–36; *see* Doc. 1-6.]  As a result, Plaintiff sent Gibbs International a letter requesting repairs and remediation of the mold and water stains.  [Docs. 22 ¶ 37; 1-7.]

On December 23, 2023, Plaintiff hired Watson Mold and Air Quality ("Watson") to conduct an inspection of the air quality and presence of mold in the Premises, which revealed substantial mold growth present and heavy mold accumulations.  [Doc. 22 ¶¶ 43, 46, 67–69; *see* Docs. 1-8 at 4–5; 1-11 at 33–35.]  Watson also discovered an odor neutralizer in the HVAC system that Plaintiff alleges was placed there to mask the smell of mold.  [Docs. 22 ¶¶ 47–48; 1-9.]  On January 24, 2024, counsel for Mr. Gibbs sent a

3

letter to Plaintiff stating that "the mold and water leak stain identified by [Plaintiff] as being present in the property upon [Gibbs International] vacating the Premises are those that were present when [Plaintiff] investigated and inspected the property when it purchased the property in May of 2022."  [Docs. 22 ¶¶ 74–75; 1-12 at 3.]  Plaintiff has since paid at least $739,259.08 for remediation of the mold and water intrusion issues in the Premises.  [Docs. 22 ¶ 83; *see* Doc. 1-14.]

Plaintiff filed this action against Mr. Gibbs and Gibbs International on March 26, 2024, and amended its Complaint on June 11, 2024, asserting claims against Mr. Gibbs for breach of contract, breach of contract accompanied by a fraudulent act, civil conspiracy, fraud and misrepresentation, constructive fraud, negligent misrepresentation, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), and fraudulent inducement.  [Docs. 1; 22.]  On June 18, 2024, Mr. Gibbs filed a motion to dismiss Plaintiff's claims against him as stated in the Amended Complaint.  [Doc. 25.]  Plaintiff filed a response on July 2, 2024 [Doc. 30], and Mr. Gibbs filed a reply on July 23, 2024 [Doc. 41].  This motion is ripe for review.

## APPLICABLE LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences,

4

unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## **DISCUSSION**

Mr. Gibbs argues that Plaintiff's claims against him should be dismissed for failure to state a claim upon which relief can be granted. [Doc. 25.] For the reasons discussed below, the Court dismisses Plaintiff's breach of contract, breach of contract accompanied by a fraudulent act, and SCUTPA claims against Mr. Gibbs but concludes that Mr. Gibbs's arguments on Plaintiff's remaining causes of action against him are more appropriate for summary judgment.

**Plaintiff's Breach of Contract Claims**

Mr. Gibbs first argues[2] that Plaintiff's claim for breach of contract fails to state a plausible claim for relief because all of the alleged offending conduct took place prior to the execution of the PSA, and the covenant of good faith and fair dealing upon which Plaintiff bases its claim applies only to already-existing contractual duties.  [Doc. 25-1 at 13–17.]  Plaintiff's claim for breach of contract accompanied by a fraudulent act fails for the same reason, Mr. Gibbs argues, but also because the same conduct cannot constitute both the alleged breach of contract and fraudulent act.  [*Id*. at 18–20.]

The Court agrees with Mr. Gibbs that Plaintiff fails to state a claim for breach of contract against Mr. Gibbs because Plaintiff cannot show that a contract existed at the time of the alleged misrepresentations concerning water damage and mold.  In South Carolina, "the implied covenant of good faith and fair dealing is not an independent cause of action separate from [a] claim for breach of contract." *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 884 (S.C. Ct. App. 2004).  "[A] claimant pleading breach of the implied covenant of good faith and fair dealing must show (1) the parties had a contractual relationship and (2) the . . . defendant breached that implied covenant." *TRB Mellichamp LLC v. Concrete Supply Co.*, No. 2:20-4413-RMG, 2021 WL 6206582, at *2

---

[2] Mr. Gibbs's threshold argument is that Plaintiff released Mr. Gibbs from any liability related to the condition of the Property as set forth in Section 10.1.5 of the PSA.  [Doc. 25-1 at 11–13.]  However, the Court concludes that Section 10.1.5 does not apply to Plaintiff's breach of contract claims because the alleged breach of the implied covenant of good faith and fair dealing occurred *before* execution of the PSA, and does not apply to Plaintiff's fraud claims because the provision specifically carves out claims "arising out of seller's or its agents' or representatives' fraud" [Doc. 1-4 at 29], and Plaintiff has plausibly alleged fraud, as discussed further below.

(D.S.C. Mar. 5, 2021). There is no covenant of good faith and fair dealing prior to the existence of a contract. *See* Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."); *id*. cmt. c ("This Section . . . does not deal with good faith in the formation of a contract. . . . [R]emedies for bad faith in the absence of agreement are found in the law of torts or restitution."). Here, it is clear that no contract existed between the parties at the time of the alleged breach. [*See* Doc. 22 ¶ 89.] And, although Plaintiff argues in its response to Mr. Gibbs's motion to dismiss that Mr. Gibbs breached the implied covenant of good faith and fair dealing by "fail[ing] to correct this [false] information during the execution of the PSA" [Doc. 30 at 11], the Amended Complaint contains no allegations to this effect [*see generally* Doc. 22]. Nor does Plaintiff cite any case law supporting the proposition that a party to a contract may be liable for breach of contract for failure to act in good faith prior to the execution of a contract. [*See generally* Doc. 30 at 9–12]; *see* Restatement (Second) of Contracts, § 205 cmt. c ("[R]emedies for bad faith in the absence of agreement are found in the law of torts or restitution.").

Plaintiff's claim for breach of contract accompanied by a fraudulent act, in addition to missing the requisite breach of contract, also fails because Plaintiff does not allege separate conduct constituting the breach and the fraudulent act. "In order to maintain a claim for breach of contract accompanied by fraudulent act, a plaintiff must prove three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract, not merely to its making; and (3) a fraudulent act accompanying the breach." *Hotel & Motel Holdings, LLC v. BJC Enters.*, 780 S.E.2d 263, 273–74 (S.C. Ct. App.

8

2015). The alleged fraudulent act must be "separate and distinct from the act(s) constituting the breach." *Smith v. Canal Ins.*, 269 S.E.2d 348, 350 (S.C. 1980). Here, as Mr. Gibbs correctly argues, the alleged conduct that purportedly constitutes a fraudulent act—withholding information about the condition of the Property—is the same conduct that Plaintiff alleges constitutes the breach of the PSA. [Doc. 25-1 at 20 (citing Doc. 22 ¶¶ 88–89, 92, 114–15, 118–19).] In response to this argument, Plaintiff merely argues that "Mr. Gibbs's fraudulent statements and subsequent failure to correct those statements during the execution of the PSA constituted a breach of his obligations under the PSA and its terms," further clarifying that the alleged conduct is one and the same. [Doc. 30 at 14.]

Accordingly, the Court grants Mr. Gibbs's motion to dismiss as to Plaintiff's causes of action for breach of contract and breach of contract accompanied by a fraudulent act. If anything, as discussed further below, Plaintiff's causes of action against Mr. Gibbs in this case sound in fraud, not in breach of contract.

**Plaintiff's Claims for Fraud and Misrepresentation, Fraudulent Inducement, Constructive Fraud, and Negligent Misrepresentation**

The Court next addresses Plaintiff's various fraud and misrepresentation claims.[3] Mr. Gibbs argues that Plaintiff's fraud and misrepresentation, fraudulent inducement, and constructive fraud claims should be dismissed because there is no evidence that water intrusion or mold actually existed at the time the PSA was executed, and Plaintiff

---

[3] Causes of action for fraud and misrepresentation, fraudulent inducement, constructive fraud, and negligent misrepresentation all require proof of similar elements, and thus the Court will analyze these claims together.

9

unreasonably relied on Mr. Gibbs's representations. [Doc. 25-1 at 23–28, 32–33.] Similarly, Mr. Gibbs argues that Plaintiff's negligent misrepresentation claim fails because it has not sufficiently pled that Mr. Gibbs made a false representation and because Plaintiff was not justified in relying on any such representation. [*Id*. at 28–30.] Plaintiff argues that it has sufficiently pled the elements of fraud and that Mr. Gibbs's arguments regarding Plaintiff's reasonable reliance on Mr. Gibbs's fraudulent statements are premature at the motion to dismiss stage. [Doc. 30 at 17–25, 27–29.] The Court agrees with Plaintiff.

To state a cause of action for fraud in South Carolina, a plaintiff must allege facts showing: "(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993). Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with particularity by alleging "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (internal quotation marks omitted). A claim for fraudulent inducement requires proof of the same elements. *See Turner v. Milliman*, 708 S.E.2d 766, 769 (S.C. 2011). To establish a claim for constructive fraud, all the elements of fraud must exist except that "constructive fraud does not require the element of intent to deceive." *Maybank v. BB&T Corp.*, 787 S.E.2d 498, 517 (S.C. 2016). Finally, "[t]he key difference between fraud and negligent misrepresentation is that fraud requires the conveyance of a known falsity, while negligent misrepresentation is

predicated upon transmission of a negligently made false statement." *Armstrong v. Collins*, 621 S.E.2d 368, 375–76 (S.C. Ct. App. 2005) (internal quotation marks omitted); *see also Creaturo v. Wells Fargo Bank NA*, No. 2:11-2798-RMG, 2012 WL 13005318, at *5 (D.S.C. Apr. 30, 2012) ("[F]raud is not an element of negligent misrepresentation in South Carolina and thus the heightened pleading standard is not required.").

Here, Plaintiff alleges that Mr. Gibbs, through his representatives, intentionally told Plaintiff that there was no evidence of mold or water intrusion on the Premises prior to the execution of the PSA even though he knew or should have known that mold and water intrusion were present at the time Plaintiff purchased the Property. [Doc. 22 ¶¶ 16–18, 20–27, 47–48, 74–75, 136–42.] Plaintiff further alleges that it detrimentally relied on Mr. Gibbs's fraudulent statements, subsequently purchased the Property, and was forced to incur all of the costs for the necessary remediation. [*Id*. ¶¶ 28, 83, 143–45.] The Court concludes that these allegations are sufficient at this stage to state a claim for fraud and the lesser fraud claims. As to Mr. Gibbs's argument that Plaintiff had no right to rely on Mr. Gibbs's statements because it was put on actual notice of the prior water intrusion from its inspection reports, the Court agrees with Plaintiff that the allegations in the Amended Complaint are sufficient at the motion to dismiss stage.[4] *See Unlimited Servs.,*

---

[4] Mr. Gibbs also argues that Section 10 of the PSA precludes any fraud claims by Plaintiff. [Doc. 25-1 at 24–25.] However, the Court again concludes that Section 10 does not apply because Plaintiff has sufficiently alleged that Mr. Gibbs's statements were fraudulent. [*See* Doc. 1-4 at 29 (providing that nothing in the section of the PSA concerning Plaintiff's right to rely on information provided by Mr. Gibbs "shall apply . . . with respect to any claims arising out of [Mr. Gibbs's] fraud.").] Moreover, a general disclaimer provision does not protect a seller against claims of fraud and negligent misrepresentation. *See In re Marine Energy Sys. Corp.*, 299 F. App'x 222, 229 (4th Cir. 2008) ("A general non-reliance clause does not prevent one from proceeding on tort theories of negligent misrepresentation and fraud because to hold otherwise would leave swindlers free to extinguish their victims' remedies simply by sticking in a bit of boilerplate." (cleaned up)).

11

*Inc. v. Macklen Enters.*, 401 S.E.2d 153, 155 (S.C. 1991) ("The general rule is that questions concerning reliance and its reasonableness are factual questions for a jury."); *cf. Isom v. Ford Motor Credit Co.*, No. 3:04-1037-10BD, 2004 WL 7338179, at *2 (D.S.C. Dec. 8, 2004) (rejecting the defendant's argument that the plaintiff failed to state fraud claims because he had no right to rely on any representations made); [*see also* Doc. 30 at 20–22.]  Whether Plaintiff will be able to forecast evidence to survive summary judgment based on this issue is a question to be determined.

Accordingly, the Court denies Mr. Gibbs's motion to dismiss as to Plaintiff's claims for fraud and misrepresentation, fraudulent inducement, constructive fraud, and negligent misrepresentation.

**Plaintiff's Claim for Civil Conspiracy**

Mr. Gibbs argues that Plaintiff's civil conspiracy claim fails to allege a combination of two or more persons because there are no allegations regarding Gibbs International's participation in the alleged fraud.  [Doc. 25-1 at 20–22.]  Plaintiff argues that the Amended Complaint sufficiently alleges that Mr. Gibbs and Gibbs International conspired to intentionally withhold past and present information regarding water intrusion and mold to ensure the sale of the Premises.  [Doc. 30 at 15–17.]  To state a claim for civil conspiracy in South Carolina, a plaintiff must allege "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2024).  "Conspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators, and other

circumstances." *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Plan. Corp.*, 596 S.E.2d 51, 57 (S.C. 2004).

The Amended Complaint alleges that Mr. Gibbs, as seller of the Premises, knew of preexisting water intrusion and mold and desired to pass on the costs for repairing the damage to Plaintiff. [Doc. 22 ¶¶ 124–25.] Plaintiff further alleges that Gibbs International knew of preexisting and current water intrusion and mold within the Premises and desired to avoid its obligations under the Lease to repair, maintain, and pay for remediation of the water intrusion and mold. [*Id.* ¶¶ 126–27.] Thus, Plaintiff alleges, Mr. Gibbs and Gibbs International conspired to intentionally withhold information regarding water intrusion and mold to ensure the sale of the Premises and force Plaintiff to incur all costs for remediation of the Premises. [*Id.* ¶¶ 128–30.] And Plaintiff alleges that it has incurred over $739,259.08 in remediation expenses. [*Id.* ¶ 83.] The Court concludes that these facts are sufficient at this stage to state a claim for civil conspiracy and denies Mr. Gibbs's motion to dismiss as to this claim.

**Plaintiff's Claim for Violation of the SCUTPA**

Mr. Gibbs argues Plaintiff's SCUTPA claim should be dismissed because Mr. Gibbs's conduct is not capable of repetition and does not affect public interest. [Doc. 25-1 at 30–32.] To plead a violation of the SCUTPA, a "plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). "A plaintiff may show that unfair or deceptive acts or practices have an impact upon the public interest by demonstrating a potential for

13

repetition." *Beaumont v. Walter Scotty Branch*, No. 2:23-cv-03546-DCN, 2023 WL 7075101, at *18 (D.S.C. Oct. 26, 2023). "The legislature intended in enacting the [SCUTPA] to control and eliminate the large scale use of unfair and deceptive trade practices within the state of South Carolina." *Noack Enters. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d 347, 349 (S.C. Ct. App. 1986) (internal quotation marks omitted). Even if a defendant's alleged conduct constitutes an unfair or deceptive practice, however, "[t]he SCUTPA is unavailable to redress private wrongs if the public interest is unaffected." *Ardis*, 431 S.E.2d at 271.

The Court concludes that Plaintiff has not sufficiently pled an impact on the public interest here, as the sale of commercial property between two parties does not affect the public interest as contemplated by the SCUTPA. *See, e.g.*, *Noack Enters.*, 351 S.E.2d at 350 (concluding the plaintiff had not adequately alleged impact on public interest where allegedly unfair and deceptive acts occurred in the sale of a business); *Daisy Outdoor Advert. Co. v. Abbott*, 473 S.E.2d 47, 51 (S.C. 1996) ("[U]nfair or deceptive acts in the sale of a business itself, or in sales outside the ordinary course of business, are not readily susceptible to repetition and, therefore, have no impact on the public interest."). Although Plaintiff argues that it has alleged previous fraudulent actions by Mr. Gibbs related to the sale of products that support the potential for repetition, a footnote citing to four prior civil actions—only one of which included Mr. Gibbs as a party and none of which resulted in an adverse finding against Mr. Gibbs or Gibbs International—is insufficient to demonstrate that Mr. Gibbs engaged in similar alleged conduct in the past. [*See* Doc. 22

¶ 189 & n.22.]  Thus, the Court grants Mr. Gibbs's motion to dismiss as to Plaintiff's cause of action for violation of the SCUTPA.[5]

## CONCLUSION

Wherefore, based upon the foregoing, Defendant Jimmy Gibbs's motion to dismiss [Doc. 25] is GRANTED IN PART and DENIED IN PART.  Mr. Gibbs's motion is granted as to Plaintiff's claims against him for breach of contract, breach of contract accompanied by a fraudulent act, and violation of the SCUTPA and denied as to Plaintiff's remaining claims.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

March 31, 2025
Greenville, South Carolina

---

[5] Mr. Gibbs also argues that the Court should award Mr. Gibbs attorney's fees and costs associated with defending this action under Section 18.6 of the PSA.  [Doc. 25-1 at 33–34.]  Because the PSA provides for an award of fees and costs only to the "prevailing party" and the Court only partially grants Mr. Gibbs's motion to dismiss, an award of fees and costs to Mr. Gibbs at this time would be premature.